**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

July 1, 2026

Honorable Nusrat J. Choudhury
United States District Court Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *William Ulises Mondragon Molina v. Maldonado*, et al., 26-cv-3910 (NJC)

Dear Judge Choudhury:

This Office represents Respondents in the above-referenced action, in which Petitioner William Ulises Mondragon Molina ("Petitioner") filed a Petition for a writ of habeas corpus on June 30, 2026, challenging his detention by Immigration and Customs Enforcement ("ICE). *See* Docket Entry ("DE") # 1. Respondents respectfully submit this letter in response to the Stay of Removal and Order to Show Cause entered on June 30, 2026 (DE #5) (the "Order"), requiring Respondents to provide certain information identified by the Court by July 1, 2026, at 12 p.m. As directed by the Order, Respondents address the merits of the Petition below, while reserving all rights, including the right to appeal, in lieu of a formal responsive memorandum of law to conserve judicial and party resources, and to expedite the Court's consideration of this case.

As explained below, the Petition should be denied. Petitioner is properly being detained pursuant to 8 U.S.C. § 1226(a), and the custody determination by Immigration and Customs Enforcement ("ICE") is not subject to district court review.

**<u>Background</u>**

With regard to the questions posed to Respondents in the Order, Respondents respond as follows:

Petitioner is a native of El Salvador and has been assigned A number 220-474-704. The undersigned has conferred with agency counsel for ICE who has stated that Petitioner is currently detained at the Metropolitan Detention Center in Brooklyn, New York ("MDC"). *See* Declaration of ICE Supervisory Detention and Deportation Officer ("SDDO") John Diaz ("Diaz Decl."), submitted herewith, ¶ 23. At the time of his arrest on March 12, 2026, Petitioner was transported to Nassau County ICE Intake for post-arrest processing. *Id.* ¶ 9. Petitioner was then transferred to the Nassau County Correctional Center located in East Meadow, New York. *Id.* ¶ 12. On March 13, 2026, Petitioner was transferred from Nassau County Correctional Center to Delaney Hall Detention Facility located in Newark, New Jersey. *Id.* ¶ 13. On March 27, 2026, Petitioner was transferred from the Delaney Hall Detention Facility to MDC. *Id.* ¶ 14. As of the filing of this

letter, there is no indication that he will be detained at the Central Islip Holding Room other than as required to produce him for the hearing scheduled to be conducted on July 6, 2026. ICE has been made aware of the Court's order prohibiting transfer of Petitioner to a facility outside of this district, the Southern District of New York or the District of New Jersey and has advised that Petitioner will not be transferred outside thereof prior to the Court's scheduled hearing on July 6, 2026. In the event Petitioner is transferred, this Office will promptly notify Petitioner's counsel.[1] While detained at MDC, Petitioner's counsel may contact Supervisory Detention and Deportation Officer ("SDDO") Khristopher Dawson, Phone number: 212-863-3497; Email: Khristopher.Dawson@ice.dhs.gov.

Petitioner unlawfully entered the United States at an unknown place and time, without inspection or permission by an immigration official. Diaz Decl. ¶ 5.

On June 24, 2019, Petitioner was arrested for N.Y. Vehicle and Traffic Law (VTL) § 1192(02). *Id.* ¶ 6, Exh. A. On January 17, 2020, Petitioner was convicted upon plea of guilty to VTL § 1192(02) and sentenced to a conditional discharge where he had to complete an Alcohol Abuse Program and fined $750. *Id.* On November 25, 2024, Petitioner was arrested for VTL § 1192(03) within ten years of a previous conviction. *Id.* ¶ 7. On June 27, 2025, Petitioner was convicted upon plea of guilty to VTL § 1192(03) within ten years of a previous conviction and sentenced to five years' probation, $1000 fine and Petitioner's license was revoked for 40 days. *Id.*, Exhs. A, B.

On or about March 4, 2026, the Long Island Fugitive Operations received a notification from the Nassau County Department of Probation that Petitioner was reporting to the Probation office located at 400 County Seat Drive, Mineola, NY 11501, for a scheduled interview on or about March 12, 2026. *Id.* ¶ 8. A Warrant of Arrest (Form I-200) was executed in advance of the arrest. *Id.*, Exh. C.

On March 12, 2026, Long Island Fugitive Operations, along with Customs and Border Patrol ("CBP") arrested Petitioner at the Nassau County Department of Probation pursuant to the I-200 at approximately 6:36. P.M. and transported him to the Nassau County ICE Intake for post-arrest procession, during which ICE served Petitioner with the Form I-200, Warrant of Arrest and Form I-862, Notice to Appear ("NTA"), charging Petitioner as inadmissible to the United States pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General. *Id.* ¶ 8, Ex. D. The NTA was issued during the arrest processing. *Id. See also id.*, Exh. E. Although the Petitioner was also served with a Custody Determination, Form I-862, it was issued in error because he was subject to mandatory detention. *Id.* ¶ 10. At that time, Petitioner's detention was governed by 8 U.S.C. § 1225(b)(2)(A). *Id.* ¶ 11. On March 12, 2026, ICE filed the NTA with the Executive Office for Immigration Review ("EIOR"), thereby commencing removal proceedings against Petitioner. *Id.* ¶ 12.

---

[1] Your Honor has also ordered that Petitioner not be removed from the United States pending the Court's further Order; ICE will comply with this Order as well but, even absent such Order, Respondents respectfully note that there is no administratively final order of removal for Petitioner.

On April 24, 2026, Petitioner appeared at an initial master calendar hearing via video teleconference where the Immigration Judge took pleadings and Petitioner admitted the allegations and conceded the charges of removability charged in the NTA. *Id.* ¶ 15. The Petitioner filed an application for relief. *Id.* The matter was reset to an individual hearing on June 5, 2026. *Id.*

On April 28, 2026, the United States Court of Appeals for the Second Circuit issued its decision in *Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). The Second Circuit held that § 1225(b)(2)(A) does not apply to aliens who are present in the United States after entering the country without inspection and admission, and who were not apprehended at or near the border at the time of entry. *Id.* at *2. Rather, the Second Circuit held that § 236(a) of the INA, 8 U.S.C. § 1226(a) ("Section 1226(a)") would apply in those circumstances.[2] *Id.*

On June 5, 2026, Petitioner appeared for an individual hearing via video teleconference where the Immigration Judge denied all relief and ordered the Petitioner removed. *Id.* ¶ 17; Exh. F. The Petitioner reserved appeal. *Id.* Petitioner's Notice of Appeal is due July 6, 2026. *Id.*

On May 1, 2026, ICE New York received a list of aliens in custody that may be subject to INA § 236(a), 8 U.S.C. § 1226(a) in light of the Second Circuit decision Barbosa da Cunha, which list included Petitioner. *Id.* ¶ 16. ICE New York has been in the process of conducting custody determinations for those individuals subject to INA § 236(a), 8 U.S.C. § 1226(a) for whom a custody determination was had not been previously done. *Id.* ¶ 16. On June 6, 2026, ICE conducted an individualized custody determination under INA § 236(a), 8 U.S.C. § 1226(a) which entails a review of the alien's immigration history, criminal history, factors relating to flight risk and interviewing the alien to determine if there are any special vulnerabilities as well as an assessment of the alien's risk classification. ICE concluded that Petitioner was a danger to persons or property as a result of his two Driving While Intoxicated convictions. *Id.* ¶ 18. Upon completion of that individualized custody determination, ICE filled out Form I-286, Notice of Custody Determination (I-286), and provided Petitioner with notice of the determination on that same date. Id. ¶ 19., Exh. G. The I-286 also included a notice that Petitioner may request a review of his custody determination by an immigration judge. *Id.* ¶ 20. Petitioner signed the form requesting a review of his custody determination. *Id.*, Ex. G.

On June 8, 2026, the I-286 was filed with EOIR. *Id.* ¶ 21. A bond hearing was scheduled for June 15, 2026. *Id.*, Exh. H. On June 15, 2026, the Petitioner appeared for a bond hearing via video teleconference where the Petitioner withdrew the bond redetermination request on the record. *Id.*¶ 22.

**The Habeas Petition Should Be Denied**

As noted above, on April 28, 2026, the Second Circuit held in *Cunha* that § 1226(a) applies to aliens who, like Petitioner, entered the United States without inspection and admission and were

[2] The Government is still evaluating next steps in *Cuhna*. For purposes of a potential future appeal, in the event *Cunha* is vacated, stayed, or overruled, Respondents respectfully preserve their arguments that § 1225(b)(2)(A) applies.

not apprehended at or near the border at the time of entry. 2026 WL 1146044, at *2. Because *Cunha* controls in the factual circumstances that apply to Petitioner, Respondents respectfully submit that Petitioner's detention, which was at the time he was detained on March 12 under 8 U.S.C. § 1225(b)(2)(A), is now pursuant to §1226(a).[3] As such, his remedy, if any, if administrative.

Under § 1226(a), the Government may arrest and detain an alien during his removal proceedings or release him on bond or conditional parole. Section 1226(a) provides, in relevant part, that:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole;

8 U.S.C. § 1226(a). By regulation, immigration officers conduct custodial determinations and may release aliens if the alien meets his burden of showing that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). *See Fontanelli, as Next Friend of Bernal Garcia v. Francis*, No. 25-cv-07715 (JLR), 2025 WL 2773234, at *4 (S.D.N.Y. Sept. 29, 2025) ("The Government's broad [post-arrest detention] discretion under § 1226(a) has a limitation: before the Government may exercise such discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination, specifically whether the noncitizen is a danger to person or property or persons and is likely to appear for any future proceeding.") (citations and internal quotation marks omitted); *Hamilton v. Shanahan*, No. 09-cv-6869 (SAS), 2009 WL 5173927, at *2 (recognizing that the alien bears the burden of proof). *See also Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020) (referring to "post-arrest custody determination" under § 1226(a).)

Once ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination. Section 1226(e) provides that "[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by [ICE] under this section regarding the

---

[3] Respondents recognize that this argument has been rejected by courts in this District. *See Inestroza Carbajal v. Frazier*, No. 26-CV-2778 (SJB), 2026 WL 1309265 (E.D.N.Y. May 12, 2026). *See also Grance v. Maldonado*, No. 26-CV-3346 (AMD), 2026 WL 1815931 (E.D.N.Y. June 24, 2026); *N.A.P.P. v. Mullin*, No. 26-CV-3387 (NRM), 2026 WL 1674158 (E.D.N.Y. June 10, 2026); *Herrera v. Blanche*, No. 26-CV-03321 (OEM), 2026 WL 1674206 (E.D.N.Y. June 10, 2026); *S.G.V. v. Genalo*, No. 26-CV-2893 (PKC), 2026 WL 1492770 (E.D.N.Y. May 28, 2026).

detention of any [noncitizen] or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Thus, "[a] district court has no authority to review ICE's discretionary determinations made under [Section 1226] or otherwise question their propriety." *Id.* (citing 8 U.S.C. § 1226(e)). *Fontanelli*, 2025 WL 2773234, at *4.

After ICE makes the initial custody determination, an alien can request a custody redetermination (*i.e.*, a bond hearing) by an immigration judge ("IJ") at any time before a final order of removal is issued. *See* 8 C.F.R. § 236.1(d)(1). Under 8 C.F.R. § 1003.19(h)(3), an alien may seek a redetermination of custody conditions set by ICE before an immigration judge must "first demonstrate, by clear and convincing evidence, that release would not pose a danger to other persons or to property. If an alien meets this burden, the alien must further demonstrate, by clear and convincing evidence, that the alien is likely to appear for any scheduled proceeding or interview." *See Hylton v. Shanahan*, 2015 WL 3604328 (S.D.N.Y. June 9, 2015) (declining to shift burden of proof onto government in a bond hearing in immigration court where respondent was detained under § 1226(a)).

If dissatisfied with the IJ decision, the alien can seek review by the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(F), 1003.38, 1236.1(d)(3). *See also Monterosa v. Decker*, No. 20-cv-02653, 2020 WL 1847771, at *3 (S.D.N.Y. Apr. 11, 2020) ("After ICE makes and initial detention decision, any person who is detained has the right to request a bond hearing before an Immigration Judge.").

No judicial review is available. *See Arevalo-Guasco v. Dubois*, 788 Fed Appx. 25, 27 (2d Cir. 2019) (concluding that § 1226(e) precludes judicial review of the IJ's weighing of evidence and factual findings regarding whether [Petitioner-Appellant] is a danger to the community"); *Hamilton v. Shanahan*, No. 09-cv-6869 (SAS), 2009 WL 5173927, at *3 ("Section 1226(e) specifically divests [district courts] of jurisdiction to review the decisions of the IJ and the BIA (acting on behalf of the Attorney General) regarding the detention of aliens under Section 1226.")

Here, now that the Second Circuit has ruled in *Cunha* that § 1226(a) is the relevant detention authority, and not mandatory detention under 8 USC 1225(b)(2)(A), ICE is detaining Petitioner during pursuant to § 1226(a). ICE has made an individualized custody determination that Petitioner poses a danger to persons or property. Diaz Decl. ¶ 18. Petitioner withdrew his request for review of that custody determination by an IJ, therefore the bond hearing did not proceed (let alone BIA review of such IJ decision, if the outcome were to prove unfavorable to Petitioner). *Id.* ¶ 22. Therefore, Petitioner has not exhausted administrative remedies. Numerous courts in this Circuit have held that to the extent that habeas petitioners want to challenge the initial custody determination, ordinarily they must exhaust administrative remedies before seeking federal court intervention. *See, e.g.*, *Almonte Rojas v. Genalo*, No. 25-cv-6543, 2026 WL 275991, at *1 (E.D.N.Y. Feb. 3, 2026) (Komitee, J.) (citing *Castillo Lachapel v. Joyce*, 786 F. Supp. 3d 860, 864 (S.D.N.Y. 2025)); *accord Fontanelli*, 2025 2773224, at *5-*8. *See also Capunay Guzman v. Joyce,* 786 F.Supp.3d 865, 869 (S.D.N.Y. 2025); *J.C.G. v. Genalo*, No. 24-cv-8755 (JLR), 2025 WL 88831, at *4 (S.D.N.Y. Jan. 14, 2025); *Roman v. Decker*, No. 20-cv-3752 (JGK), 2020 WL 4273823, at * 7 (S.D.N.Y. July 24, 2020); *Michalski v. Decker*, 279 F. Supp. 3d 487, 496 (S.D.N.Y. 2018); *Paz Nativi v. Shanahan*, No. 16-cv-8496, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) ("before immigration detention may be challenged in federal court . . . exhaustion is generally required as a prudential matter" (collecting cases)). The exhaustion requirement "aims to provide

the agency with a chance to correct its own errors, 'protect[ ] the authority of administrative agencies,' and otherwise conserve judicial resources by 'limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary.'" *Id.* (*quoting Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.)).

As Petitioner has received an initial custody determination pursuant to § 1226(a), but withdrew his request for a bond hearing, he has failed to pursue his administrative remedies (*i.e.*, a bond hearing before an IJ) and the Petition should be denied and this action dismissed. *See, e.g.*, *Portillo Melara v. Tellez*, No. 26-cv-1453, 2026 WL 1146054 (E.D.N.Y. Apr. 28, 2026) (Donnelly, J.); *Almonte Rojas*, 2026 WL 275991, at *1. As the court in *Castillo Lachapel* explained, "[i]f the immigration judge releases [petitioner] on bond, his [habeas petition would be moot . . . . And even if the immigration judge denies bond, [the] petition could be mooted if the Board of Immigration Appeals reverses that determination." 786 F. Supp. 3d at 864 (internal quotation marks and citation omitted).

Nor do any of the recognized exceptions to exhaustion apply here. A district court may in its discretion excuse exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile and (4) in certain instances a plaintiff has raised a substantial constitutional question." *See Beharry*, 329 F.2d at 62. Numerous courts in this Circuit have also found that none of these exceptions apply where, as here, an immigration judge or the BIA could release a habeas petitioner detained under 8 U.S.C. § 1226(a) on bond. *See, e.g.*, *Castillo Lachapel*, 2025 WL 1685576 at *3; *Capunay Guzman*, 2025 WL 1696891 at *2-*3; *Monterosa*, 2020 WL 1847771 at *6-*7; *Roman*, 2020 WL 4273823, at *7; *Michalski*, 279 F. Supp. 3d at 496.

With respect to the first exception, as explained above, Petitioner has available administrative remedies—a bond hearing with an immigration judge *and* appeal of the immigration judge's decision, if adverse, to the BIA. *See Castilla Lachapel*, 2025 WL 1685576, at *3 (describing the two levels of administrative review available to petitioner). "Because [Petitioner]'s [potential] bond hearing may provide him with the relief that he seeks—i.e., his release—this Court concludes in the exercise of its discretion that [Petitioner] must exhaust these avenues before seeking judicial relief." *Id.* (internal quotations and citations omitted). *See Michalski*, 279 F. Supp. 3d at 496 (finding that a scheduled bond hearing "scuttles" petitioner's habeas petition because the immigration judge could release him on bond making his habeas petition moot); *Paz Nativi*, 2017 WL 281751, at *2 ("The pendency of a BIA appeal that could potentially moot [petitioner's] habeas petition counsels for the Court to stay its hand until the exhaustion of administrative review in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings.").

The second exception is also inapplicable. Petitioner cannot show irreparable harm at this time. Now that the Second Circuit has ruled in *Cunha* that § 1226(a) is the relevant detention authority, he has received an individualized custody determination but failed to avail himself of available administrative remedies. *See Capunay Guzman*, 2025 WL 1696891, at *1, *3 (where petitioner had been detained for nineteen days "'[t]he risk of prolonged detention'—as opposed to actual prolonged detention—'does not constitute an irreparable injury that excuses the prudential exhaustion requirement'") (quoting *Roman*, 2020 WL 4273823, at *8).

Similarly, as to the third exception, Petitioner has not shown that a bond hearing would be futile. *See Michalski*, 279 F. Supp. 3d at 496; *Capunay Guzman*, 2025 WL 1696891, at *2 (petitioner's "arguments concerning the futility of any bond motion are similarly premature, as he has not yet made a motion for bond"). *See also Cabral v. Decker*, 331 F. Supp. 3d 255, 263 n. 6 (S.D.N.Y. 2018) ("[T]he question of whether the petitioner's yet-to-happen bond hearing complies with due process is not before this Court.").

With respect to the fourth exception, "[m]ere existence of a constitutional issue . . . does not create an automatic exception to an exhaustion requirement." *Monterosa,* 2020 WL 1847771, at *5. "Thus, when applying this exception, 'courts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis.'" *Capunay Guzman*, 2025 WL 1696891, at *3 (quoting *Monterosa*, 2020 WL 1847771, at *5). As the court in *Capunary Guzman* noted, only a few courts in this Circuit have excused exhaustion under the fourth exception in cases where the petitioner had been detained and denied bond at the bond hearing, or was not yet detained and sought to prevent re-detention. *See id.* (collecting cases).

**A. Respondents Have Not Violated Petitioner's Fourth Amendment Rights**

To the extent that Petitioner's Fourth Amendment claim is construed as arising directly under the Fourth Amendment, and not under the APA, the claim fails because his civil detention was a reasonable and lawful exercise of federal immigration authority. As the Supreme Court recognized in *Abel v. United States*, 362 U.S. 217 (1960), administrative arrests for deportation have a long-standing statutory history and are distinct from arrests for criminal offenses. The Supreme Court held that that "[s]tatutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time. It would emphasize the disregard for the presumptive respect the Court owes to the validity of Acts of Congress, especially when confirmed by uncontested historical legitimacy, to bring into question for the first time such a long-sanctioned practice of government at the behest of a party who not only did not challenge the exercise of authority below, but expressly acknowledged its validity." *Abel*, 362 U.S. at 230. Petitioner's arrest was not a criminal arrest requiring a judicial warrant or probable cause of a new crime; rather, it was a civil, administrative arrest carried out pursuant to the broad authority granted by Congress to enforce the nation's immigration laws.

Accordingly, Respondents respectfully request that the Petition be denied. Respondents do not have any further facts or legal arguments to present to the Court. Respondents also respectfully submit that there is no need for a hearing and that the Petition may be decided on submission. Respondents thank the Court for consideration of this submission.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Megan Freismuth
Megan Freismuth
Assistant U.S. Attorney

Cc: Counsel of record by ECF